UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELSA THOMPSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MUNICIPAL CREDIT UNION,<br><br>Defendant. | Cause No. 1:21-cv-7600<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

**CLASS ACTION COMPLAINT**

Plaintiff Elsa Thompson brings this Class Action Complaint against Defendant Municipal Credit Union ("Municipal" or "Defendant"), and alleges as follows:

**INTRODUCTION**

1. This case concerns Municipal's unlawful business practice of imposing multiple Non-Sufficient Funds Fees ("NSF Fee") and/or overdraft fees on an item.

2. Besides being deceptive, this practice breaches promises made in Municipal's adhesion Contract, which comprises Municipal's Account Agreement and Regulations ("Account Agreement"), attached as Exhibit A and Municipal's Schedule of Dividends, Service Charges and Fees ("Fee Schedule"), attached as Exhibit B.

3. Through the imposition of Overdraft and NSF Fees, Municipal makes millions of dollars annually. Municipal's NSF Fees fall disproportionately on racial and ethnic minorities, the elderly, and the young, many of whom regularly live paycheck to paycheck and therefore carry low bank account balances.

4. The Contract permits Municipal to charge a $32 NSF Fee when a member's account

1

contains insufficient funds to pay "an ACH debit request or bill payment you authorize or check (share draft) you draw" and Municipal rejects the charge. Ex. B at 2, 5.

5. Municipal unlawfully assesses multiple NSF or overdraft fees on a single Automated Clearing House (ACH) transaction or check transaction even though the member only authorized or "drew" a single ACH or check.

6. Municipal's Contract indicates that only a single NSF Fee or a single overdraft fee will be charged per "item" that the *accountholder* authorizes or draws. An electronic item reprocessed after an initial return for insufficient funds without the accountholder's knowledge or re-authorization cannot and does not fairly become a new, unique "item" for fee assessment purposes.

7. As discussed more fully below, it is a breach of Municipal's Contract and of reasonable consumers' expectations for Municipal to charge more than one $32 fee on an item.

8. Municipal also breaches its duty of good faith and fair dealing when it charges multiple fees on an item. Specifically, Municipal abuses its contractual discretion by (a) reprocessing transactions when it knows that a customer's account lacks sufficient funds, and (b) charging additional fees upon reprocessing.

9. Plaintiff and other Municipal customers have been injured by Municipal's improper fee maximization practice. Plaintiff, individually and on behalf of the class of individuals preliminarily defined below, bring a claim for Municipal's breach of contract, including the duty of good faith and fair dealing.

**PARTIES**

10. Plaintiff Elsa Thompson is a citizen of Lehigh Acres, Florida. She has maintained a checking account at Municipal at all times relevant hereto.

11. Defendant Municipal Credit Union is a credit union with nearly $4.2 billion in assets. Municipal maintains its headquarters and principal place of business in New York, NY. Among other things, Municipal is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the Class. Municipal operates banking centers, and thus conducts business, throughout the State of New York, including within this District.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class (including Plaintiff) is a citizen of a State different from the Defendant. The number of members of the proposed Class in aggregate exceeds 100 accountholders. 28 U.S.C. § 1332(d)(5)(B).

13. This Court has personal jurisdiction over the Defendant because it resides in, regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District and in New York.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District—where Municipal maintains its headquarters and where Plaintiff conducts her banking business with Municipal.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I.    Municipal Improperly Charges Two Or More Fees on an Item**

15. Overdraft fees and NSF Fees are among the primary fee generators for banks. According to a banking industry market research company, Moebs Services, in 2018 alone, banks

3

generated an estimated $34.5 billion from overdraft fees. *Overdraft Revenue Inches Up in 2018*, Moebs 1 (Mar. 27, 2019), https://bit.ly/3cbHNKV.

16. Unfortunately, the customers who are assessed these fees are the most vulnerable customers. Younger, lower-income, and non-white account holders are among those who were more likely to be assessed overdraft fees. *Overdrawn: Persistent Confusion and Concern About Bank Overdraft Practices*, Pew Charitable Trusts 8 (June 2014), https://bit.ly/3ksKD0I.

17. Municipal unlawfully maximizes its already profitable fees through its deceptive and contractually-prohibited practice of charging multiple NSF fees or an NSF fee followed by an overdraft fee on an item.

18. Unbeknownst to consumers, when Municipal reprocesses the electronic payment item, ACH item, or check for payment after it was initially rejected for insufficient funds and without a new authorization from the consumer, Municipal chooses to treat it as a new and unique item that is subject to yet another fee. But Municipal's contract never states that this counterintuitive and deceptive result could be possible and, in fact, promises the opposite.

19. The Federal Deposit Insurance Corporation (the "FDIC") has expressed concern with the practice of assessing multiple fees on an item. In 2012, the FDIC determined that one bank's assessment of more than one NSF Fee on the same item was a "deceptive and unfair act." *In the Matter of Higher One, Inc., Consent Order*, Consent Order, FDIC-1 1-700b, FDIC-1 1-704k, 2012 WL 7186313.

20. This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee on the same item when it is reprocessed and returned. Instead, Chase charges one fee even if an item is reprocessed and returned multiple times.

21. Plaintiff has a Municipal checking account, which was governed by Municipal's standardized Contract.

22. The Contract allows Municipal to take certain steps when paying a check, electronic payment item, or ACH item when the accountholder does not have sufficient funds to cover it. Specifically, Municipal may (a) pay the item and charge a single $32 overdraft fee; or (b) reject the item and charge a single $32 NSF Fee.

23. In contrast to the Contract, however, Municipal regularly assesses two or more $32 fees on an item.

### A. The Imposition of Multiple Fees on an Item Violates Municipal's Express Promises and Representations

24. The Contract provides the general terms of Plaintiff's relationship with Municipal, and therein Municipal makes explicit promises and representations regarding how an item will be processed, and how fees may be assessed.

25. The Contract states: "Each time an ACH debit request or bill payment *you authorize*, or check (share draft) *you draw*, is presented and returned as unpayable for any reason, a $32.00 service charge will be assessed." Ex. B at 2, 5 (emphasis added).

26. The Contract further promises that fees are assessed "per item," stating:

**NSF FEE:** (each time an ACH debit request or bill payment *you authorize*, or check (share draft) *you draw*, is presented and returned as unpayable for any reason): $32 *per item*

Ex. B at 7 (bolded italics added).

27. Taken together, the Contract thus promises that a fee will be assessed on an "item," which relates to the consumer's authorization of an ACH debit request or the consumer's action of drawing a check. Despite this promise, Municipal regularly charges two or more fees on an "item."

5

28.     The same "item" on an account cannot conceivably become a new one when it is rejected for payment then reprocessed, especially when—as here—Plaintiff did not re-authorize the ACH or draw a new check.

29.     There is zero indication anywhere in the Contract that the same "item" is eligible to incur multiple fees absent a new authorization from the consumer.

30.     Even if Municipal reprocesses an instruction for payment, it is still the same "item." Its reprocessing is simply another attempt to effectuate an account holder's original order or instruction.

31.     In sum, Municipal promises that one fee will be assessed on an item, and this term must mean all iterations of the same instruction for payment. As such, Municipal breached the Contract when it charged more than one fee per item.

32.     Reasonable consumers understand any given authorization for payment to be one, singular "item," as that term is used in the Contract.

33.     Taken together, the representations identified above convey to customers that all submissions of their underlying ACH authorization or check they drew will be treated as the same "item," which Municipal will either pay (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere do Municipal and its customers agree that Municipal will treat each reprocessing of the same underlying consumer authorization as a separate item, subject to additional fees.

34.     Customers reasonably understand, based on the language of the Contract, that Municipal's reprocessing of checks, electronic payment items, and ACH items are simply additional attempts to complete the original order or instruction for payment, and as such, will not

trigger additional fees. In other words, unless the consumer re-authorizes the ACH or re-draws the check, it is always the same item.

35. Banks and credit unions like Municipal that employ this abusive practice require their accountholders to expressly agree to it—something Municipal here never did.

36. For example, First Financial Bank, aware of the commonsense meaning of "item" clarifies that the term "item" has a very specific definition under its contract – something Municipal does not do:

> Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). **Each presentment is considered an item and will be charged accordingly.**

*Special Handling/Electronic Banking Disclosures of Charges*, First Financial Bank 2 (Mar. 2021), https://bit.ly/30rltHQ (emphasis added).

37. Municipal's Contract provides no such agreement, and actually promises the opposite—Municipal may charge, at most, a fee, per item that the *consumer* authorizes.

### B. Plaintiff's Experience

38. In support of her claims, Plaintiff offers an example of a fee that should not have been assessed against her checking account. As alleged below, Municipal: (a) reprocessed a previously declined item; (b) did not receive a new authorization from Plaintiff for that item; and (c) charged a fee upon reprocessing.

39. On or around February 22, 2017, Plaintiff attempted a single $204.86 payment to PayPal via ACH.

40. Municipal rejected payment of that item due to insufficient funds in Plaintiff's account and charged a $30 NSF Fee[1] for doing so.

---

[1] Municipal has since increased its NSF Fee from $30 each to $32 each.

41. Without Plaintiff's knowledge and without obtaining a new authorization from Plaintiff, on or around March 1, 2017, Municipal processed the same item again, rejected the item again, and charged Plaintiff a *second* $30 NSF Fee for doing so.

42. *In sum, Municipal charged Plaintiff $60 in fees on an item.*

43. Plaintiff was also charged multiple fees on an item when Municipal reprocessed it without Plaintiff's knowledge and without obtaining a new authorization from Plaintiff on February 24, 2017 and March 3, 2017; twice on February 27, 2017 and March 6, 2017; twice on February 28, 2017 and March 7, 2017; March 6, 2017 and March 20, 2017; and July 11, 2017 and July 14, 2017.

44. Because Plaintiff only gave a single authorization or only drew a single check, Plaintiff understood each authorization to be a singular "item" as is laid out in the Contract, capable of receiving, at most, a single NSF Fee if Municipal returned it, or a single overdraft fee if Municipal paid it.

45. The improper fees charged by Municipal were not errors, but rather intentional charges made by Municipal as part of its standard processing of items.

46. Plaintiff therefore had no duty to report the fees as errors.

47. Moreover, any such reporting would have been futile as Municipal made a decision to charge the fee in this specific manner to maximize profits at the expense of customers like Plaintiff.

**C. The Imposition of Multiple Fees on an Item Breaches Municipal's Duty of Good Faith and Fair Dealing**

48. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied promise to act in accordance with the parties' reasonable

8

expectations and means that Municipal is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Municipal has a duty to honor payment requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor.

49.     Here—in the adhesion agreements Municipal foisted on Plaintiff and its other customers—Municipal has provided itself numerous discretionary powers affecting customers' accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Municipal abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same item unless Municipal receives an additional authorization for their ACH payment or the consumer draws a new check.

50.     When Municipal charges multiple fees on an item without obtaining a new authorization from the consumer, it uses its discretion to define the meaning of "item" in a way that violates common sense and reasonable consumer expectations. Municipal uses its contractual discretion to define that term to choose a meaning that directly causes more fees.

51.     In addition, Municipal exercises its discretion in its own favor and to the prejudice of Plaintiff and its other customers when it reprocesses an item when it knows (1) the customer has not provided a new authorization and (2) the customer's account lacks funds, and then charges additional fees on the same item. Further, Municipal abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Contract. This is a breach of Municipal's duty to engage in fair dealing and to act in good faith.

52. It was bad faith and totally outside of Plaintiff's reasonable expectations for Municipal to use its discretion to assess two or more fees on an item, when Plaintiff only authorized a single ACH or drew a single check.

53. Municipal abuses its discretion and acts in bad faith by defining contract terms in an unreasonable way that violates common sense and by charging multiple fees on the same item without obtaining a new authorization from the consumer.

## CLASS ALLEGATIONS

54. Plaintiff brings this action individually and as a class action on behalf of the following proposed Class:

> All consumers who, during the applicable statute of limitations, were Municipal Credit Union checking account holders and were assessed multiple fees on an item that was reprocessed by Municipal Credit Union without a new authorization from the consumer.

55. Plaintiff reserves the right to modify or amend the definition of the Class as this litigation proceeds.

56. Excluded from the Class are Municipal, its parents, subsidiaries, affiliates, officers and directors, any entity in which Municipal has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

57. The time period for the Class is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as Municipal remedies the conduct complained of herein.

58. The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the identities of whom are within the exclusive knowledge of Municipal and can be readily ascertained only by resort to Municipal's records.

59. The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all members of the Class, were charged multiple fees on an item for which Plaintiff gave only a single authorization. The representative Plaintiff, like all members of the Class, has been damaged by Municipal's misconduct in that she has been assessed unlawful NSF and overdraft fees. Furthermore, the factual basis of Municipal's misconduct is common to all members of the Class and represents a common thread of unlawful and unauthorized conduct resulting in injury to all members of the Class. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other members of the Class.

60. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual members of the Class.

61. Among the questions of law and fact common to the Class include:

   a. Whether Municipal violated contract provisions by charging additional fees when it reprocessed an item without obtaining a new authorization from the consumer;

   b. Whether Municipal breached its covenant of good faith and fair dealing through its fee policies and practices as described herein;

   c. The proper method or methods by which to measure damages; and

   d. The declaratory and injunctive relief to which the Class is entitled.

62. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions, particularly on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

63. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual class member's claim is

11

small relative to the complexity of the litigation, no class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and Municipal's misconduct will proceed without remedy.

64. Even if class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows for the consideration of claims which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

65. Plaintiff suffers a substantial risk of repeated injury in the future. Plaintiff, like all Class members, is at risk of additional NSF or overdraft fees on repeated reprocessing of transactions that they did not request or authorize. Plaintiff and the Class members are entitled to injunctive and declaratory relief as a result of the conduct complained of herein. Money damages alone could not afford adequate and complete relief, and injunctive relief is necessary to restrain Municipal from continuing to commit its unfair and illegal actions.

### FIRST CLAIM FOR RELIEF
**Breach of Contract including Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Class)**

66. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

67. Plaintiff and Municipal have contracted for banking services, as embodied in Municipal's account documents. *See* Exs. A & B.

68. All contracts entered by Plaintiff and the Class are identical or substantively identical because Municipal's form contracts were used uniformly.

69. Municipal has breached the express terms of its own agreements as described herein.

70. New York imposes a duty of good faith and fair dealing on contracts between financial institutions and their customers because financial institutions are inherently in a superior position to their checking account holders because, from a superior vantage point, they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

71. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

72. Municipal abused the discretion it granted to itself when it charged multiple fees on an item without obtaining a new authorization from the consumer.

73. In this and other ways, Municipal violated its duty of good faith and fair dealing.

74. Municipal willfully engaged in the foregoing conduct for the purpose of (1) gaining unwarranted contractual and legal advantages; and (2) maximizing fee revenue from Plaintiff and other members of the Class.

75. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the agreements.

76. Plaintiff and members of the Class have sustained damages as a result of Municipal's breaches of the Contract, including breaches of the Contract through violations of the implied covenant of good faith and fair dealing.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff and members of the Class demand a jury trial on all claims so triable and judgment as follows:

a. Certification for this matter to proceed as a class action under Fed. R. Civ. P. 23;

b. Designation of Plaintiff as the Class Representatives and designation of the undersigned as Class Counsel;

c. Restitution of all improper fees paid to Municipal by Plaintiff and the Class because of the wrongs alleged herein in an amount to be determined at trial;

d. Actual damages in amount according to proof;

e. Pre- and post- judgment interest at the maximum rate permitted by applicable law;

f. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

g. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

Dated: September 10, 2021

Respectfully submitted,

/s/ James J. Bilsborrow
James J. Bilsborrow
SEEGER WEISS LLP
55 Challenger Road
Ridgefield Park, New Jersey 07660

Telephone: (212) 584-0755
jbilsborrow@seegerweiss.com

Lynn A. Toops*
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 4204
Tel: (317) 636-6481
ltoops@cohenandmalad.com

J. Gerard Stranch, IV*
BRANSTETTER, STRANCH & JENNINGS, PLLC
223 Rosa L. Parks Ave. Ste. 200
Tel: (615) 254-8801
gerards@bsjfirm.com

Christopher D. Jennings*
JOHNSON FIRM
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
Tel: (501) 372-1300
chris@yourattorney.com

* *pro hac vice* applications to be submitted

*Counsel for Plaintiff and the Proposed Class*