```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/13/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                              :

ELSA THOMPSON, individually and on behalf of all   :
others similarly situated,                       :
                                              :

                    Plaintiff,       :                21-cv-7600 (LJL)
                                      :

          -v-                      :          OPINION AND ORDER
                                      :

MUNICIPAL CREDIT UNION,                :
                                           :

                  Defendant.     :
                                           :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendant Municipal Credit Union ("Defendant" or "Municipal Credit") moves to dismiss Plaintiff Elsa Thompson's ("Plaintiff" or "Thompson") breach of contract claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. No. 26. For the following reasons, the motion to dismiss is granted.

## BACKGROUND

Plaintiff Elsa Thompson is a citizen of Florida and a customer of defendant Municipal Credit Union, where she maintains a FasTrack Checking Account. Dkt. No. 1 ("Compl.") ¶ 10; Dkt. No. 27 at 3; Dkt. No. 32 at 9. Defendant Municipal Credit Union is a credit union with its headquarters and principal place of business in New York.[1] Compl. ¶ 11.

Plaintiff brings this case as a putative class action alleging that Defendant's practice of assessing multiple fees on an item that was authorized for payment only a single time constitutes a breach of Defendant's account agreement (the "Contract") with its checking account

_____

[1] Municipal Credit Union is a member-owned, state-chartered financial institution. Membership is available to employees of the City of New York, individuals related to or living with city employees, and students at certain universities within New York City. *See* Dkt. No. 27 at 1 & n.1.

customers.  *Id.* ¶¶ 1–2, 54, 59.  Plaintiff's Contract is comprised of an Account Agreement and

Regulations ("Account Agreement") and a Schedule of Dividends, Service Charges, and Fees

("Fee Schedule").  *Id.* ¶ 2, Exs. A, B.  The Account Agreement details the rules and regulations

for multiple different types of accounts that Defendant offers, including but not limited to

FasTrack Checking Accounts.  *Id.*, Ex. A at 1.  The Fee Schedule sets forth the dividends,

service charges, and fees, and (where applicable) penalties for each of the different types of

accounts offered by Defendant.  Compl. Ex. B.  The Account Agreement incorporates the Fee

Schedule by reference.  *Id.*, Ex. A at 1.

A section of the Fee Schedule for the FasTrack Checking account includes the following

paragraph:

> **NSF Fee:** Each time an ACH debit request or bill payment you authorize, or check
> (share draft) you draw, is presented and returned as unpayable for any reason, a
> $32.00 service charge will be assessed.

*Id.* at 3.  The FasTrack Checking Account section also contains language at the end that states

"Please refer to 'OTHER FEES AND CHARGES' below for other applicable fees."  The "Other

Fees and Charges" section contains the following provision, within a bulleted list of fees:

> - **NSF FEE** (each time an ACH debit request or bill payment you authorize,
>   or check (share draft) you draw, is presented and returned as unpayable for
>   any reason): $32.00 per item.

*Id.* Ex. B at 7.

The issue in the case arises as a result of how ACH (or Automated Clearing House)

transactions are conducted.  Several parties are involved in an ACH transaction, which may

occur when a person seeks to make a bill payment online or effect a financial transaction through

a service like PayPal.  The "Receiver" is the customer who authorizes a transaction to be

conducted through the ACH network by directing that a bill be paid or money be transferred.

The individual merchant with whom the Receiver or customer does business (the "Originator")

then forwards the transaction, through the Federal Reserve System, to the Receiver or customer's

bank (the "Receiving Depository Financial Institution" or "RDFI") so that the customer's

account can be debited.  Rules exist regarding how often the third-party merchant, having been

directed to effect a transaction on behalf of the customer, can present the debit request to the

customer's bank for payment after that request has been returned for insufficient funds.  *See*

*generally Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 426–27 (6th Cir. 2018).  Thus,

"[m]erchants or payees may present an item multiple times for payment if the initial or

subsequent presentment is rejected due to insufficient funds or other reason (representment)."

Compl. ¶ 36.

Plaintiff alleges that each time a third-party merchant or bank presents to Defendant for

payment a debit request or bill payment or check that she has drawn, Defendant charges her a

separate fee.  *Id.* ¶ 18.  Thus, when Defendant reprocesses an electronic payment item, ACH

item, or check for payment after it is initially rejected for insufficient funds and without a new

authorization from the consumer, Defendant treats that reprocess request as a new transaction

subject to a new fee.  *Id.*  Plaintiff offers an example.  She pleads that she made a single $204.86

payment through PayPal on or around February 22, 2017.  *Id.* ¶ 39.  When PayPal presented that

transaction to Defendant for payment, it was rejected for insufficient funds in Plaintiff's account,

and Plaintiff was charged a $30 NSF fee.  *Id.* ¶ 40.[2]  Approximately one week later, PayPal

presented the payment to Defendant again.  Defendant processed the same $204.86 payment a

second time; when it was again rejected for insufficient funds, Plaintiff was charged a second

fee.  *Id.* ¶ 41.  This was not an isolated occurrence.  Plaintiff alleges additional instances of the

---

[2] Defendant has since increased its NSF fee from $30 each to $32 each.  Compl. ¶ 40 n.1.

same practice of Defendant charging multiple NSF fees when a single payment is processed multiple times, including charges made between February 2017 and July 2017.  *Id.* ¶ 43.

Plaintiff alleges that the burden of the NSF fees "fall[s] disproportionately on racial and ethnic minorities, the elderly, and the young, many of whom regularly live paycheck to paycheck and therefore carry low bank account balances" and that Defendant makes millions of dollars annually from the practice.  *Id.* ¶¶ 3, 16–17.  She alleges that overdraft fees and NSF fees are among the primary fee generators for banks.  *Id.* ¶ 15.  Although the complaint is laced with language describing the practice as "abusive," *id.* ¶ 20, and "deceptive," *id.* ¶¶ 2, 18–19, Plaintiff's action is one for breach of contract.[3]  She alleges that Defendant's NSF fee practice violates the terms of the parties' contract.  *Id.* ¶¶ 66–69.

Plaintiff alleges that the contract provisions constitute an explicit promise that an NSF fee will only be assessed once for a single ACH debit request and that Defendant has violated the express terms of the contract by charging multiple fees for one request.  *Id.* ¶¶ 26–31.

## PROCEDURAL HISTORY

Plaintiff filed this complaint on September 10, 2021.  *See generally* Compl.  Defendant moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on December 29, 2021.  Dkt. No. 26.  That same day, Defendant filed a memorandum of law in support of its motion.  Dkt. No. 27.  Plaintiff filed a response in opposition to the motion on February 4, 2022.  Dkt. No. 32.  Defendant filed a reply on February 25, 2022.  Dkt. No. 36.  In her response, Plaintiff noted that she is no longer pursuing her claim for breach of the covenant

---

[3] The disclosures required of credit unions are addressed by federal law through the Federal Credit Union Act and the Truth in Savings Act.  State law claims for false or deceptive advertising are preempted.  *See Lambert v. Navy Fed. Credit Union*, 2019 WL 3843064 at *2 (E.D. Va. Aug. 14, 2019).

of good faith and fair dealing.  *Id.* at 3 n.6.  Thus, this Court only considers the motion to dismiss the claim for breach of contract.

## LEGAL STANDARD

Defendant moves to dismiss pursuant to Federal Rules of Civil Procedure Rule 12(b)(6). To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

To state a claim for breach of contract under New York Law, a plaintiff must satisfy four elements: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages.  *Advanced Water Tech., Inc. v. Amiad U.S.A., Inc.*, 457 F. Supp. 3d 313, 318 (S.D.N.Y. 2020) (quoting *Swan Media Grp. v.*

*Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012)).  Defendant argues that Plaintiff has failed to plead facts establishing a breach of contract by Defendant.

Plaintiff rests her claim on the "NSF Fee" provision of the FasTrack Section of the Fee Schedule and the "NSF Fee" provision contained in the "Other Fees and Charges" section of the same document.  Plaintiff alleges that these provisions must be "[t]aken together."  Compl. ¶¶ 27, 33.  She alleges that reading the two provisions together, "the Contract . . . promises that a fee will be assessed on an 'item,' which relates to the consumer's authorization of an ACH debit request or the consumer's action of drawing a check."  *Id.* ¶ 24.  Thus, as she reads the Contract, Defendant is entitled to extract only a single fee for each authorization by a consumer of an ACH debit request or each check drawn by a consumer.  *Id.* ¶¶ 25, 27.  In her view, "reasonable consumers" would understand "any given authorization for payment to be one, singular 'item,' as that term is used in the Contract," *id.* ¶ 32, and would understand "based on the language of the Contract, that [Defendant's] reprocessing of checks, electronic payment items, and ACH items are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional fees."  *Id.* ¶ 34.  She alleges that Defendant "breached the Contract when it charged more than one fee per item."  *Id.* ¶ 31.

Defendant reads the Contract differently.  Dkt. No. 27 at 1.  Defendant argues first that the "per item" language describing the NSF Fee does not apply at all to Plaintiff's account or to any FasTrack Account because that language is contained in a provision that describes "Other Fees and Charges" and the FasTrack section of the Fee Schedule already describes the NSF Fee applicable to that account.  *Id.* at 4.  In its view, Plaintiff's reading renders the reference to the NSF Fee in the FasTrack section surplusage and creates a needless conflict between the contractual language.  *Id.* at 8.  Second, Defendant argues that even if the provision in the "Other

Fees" section applied to FasTrack accounts, it would permit Municipal Credit to charge an

additional fee each time a debit request was presented for payment and returned as unpayable.  It

contends that the "per item" language upon which Plaintiff hangs her hat refers to the

presentment of a debit request or bill payment or check for payment by the third-party merchant

or its bank and not the initial authorization by the customer.  *Id.* at 7.

The Court starts with elementary principles of contract interpretation.  Contracts must be

interpreted as a whole to "ensure that undue emphasis is not placed upon particular words and

phrases."  *Bailey v. Fish & Neave*, 868 N.E.2d 956, 959 (N.Y. 2007).  "[A] written agreement

that is complete, clear and unambiguous on its face must be enforced according to the plain

meaning of its terms."  *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002); *see*

*also Excel Graphics Techs., Inc. v. CFG/AGSCB 75 Ninth Ave., L.L.C.*, 767 N.Y.S.2d 99, 102

(1st Dep't 2003) (noting that, though a complaint must be liberally construed in favor of the

plaintiff on a motion to dismiss, "the Court is not required to accept factual allegations that are

plainly contradicted" by the relevant agreement).  Terms should be construed in accordance with

their plain meaning unless the contract defines them or parties offer evidence of a trade-specific

or technical usage.  *CBS Corp. v. Eaton Corp.*, 2010 WL 1375169, at *2 (S.D.N.Y. Mar. 30,

2010).  Courts often refer to dictionary definitions to discern the plain and ordinary meaning of

words in a contract.  *Fed. Ins. Co. v. Am. Home Assur. Co.* 639 F.3d 557, 567 (2d Cir. 2011).

However, courts must consider both the literal language and "whatever may be reasonably

implied therefrom."  *Bates Advert. USA, Inc. v. McGregor*, 282 F. Supp. 2d 209, 215 (S.D.N.Y.

2003).

Terms are presumed to have the same meaning throughout a carefully drafted document.

*See generally Int'l Fidelity Ins. Co. v. County of Rockland*, 98 F. Supp. 2d 400, 412 (S.D.N.Y.

2000) ("Sophisticated lawyers . . . must be presumed to know . . . how to use different words and construction to establish distinctions in meaning."); *Bank of N.Y. Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Cap.*, 821 F.3d 297, 309 (2d Cir. 2016) ("[W]here contract provisions use different language, courts must assume the parties intended different meanings.").  "The use of different terms in the same agreement strongly implies that the terms are to be accorded different meanings."  *NFL Enters. LLC v. Comcast Cable Commc'ns, LLC*, 851 N.Y.S.2d 551, 557 (1st Dep't 2008); *see also Kleinberg v. Radian Grp.*, 2002 WL 31422884, at *6 (S.D.N.Y. Oct. 29, 2002) (holding that failing to use express terminology in a disputed provision when the same terminology was used elsewhere in the agreement indicates an intent not to use that terminology).  Thus, though parties dispute the meaning of specific contract provisions, those provisions must be interpreted in the context of the entire agreement.  *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990).

Courts must guard against adopting a contractual interpretation that would "render any individual provision superfluous."  *Axiom Investment Advisors, LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 534 (S.D.N.Y. 2017); *see also Kolmar Ams., Inc. v. Bioversal Inc.*, 932 N.Y.S.2d 460, 494 (1st Dep't 2011) (explaining that a court must "adopt an interpretation that renders no portion of the contract meaningless") (quoting *Diamond Castle Partners v. IAC/Interactive Corp.*, 918 N.Y.S.2d 73, 75 (1st Dep't 2011)); *Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210, 1213 (N.Y. 2007) (similar).  In so doing, a court must avoid, to the extent possible, an interpretation that puts two contract provisions in conflict with one another.  *See Montblanc-Simplo v. Aurora Due S.r.L.*, 363 F. Supp. 2d 467, 475 (E.D.N.Y. 2005); *Schlaifer Nance & Co. v. Est. of Warhol*, 119 F.3d 91, 100 (2d Cir. 1997) (noting that, if possible, contract provisions should "be read together as a harmonious whole").  "It is a basic rule of contract interpretation

that if a specific and general provision of a contract conflict, the specific provision governs."

*Carolina First Bank v. Banque Paribas*, 2000 WL 1597845, at \*5 (S.D.N.Y. Oct. 26, 2000); *see*

*also Aramony v. United Way of Am.*, 254 F.3d 403, 413 (2d Cir. 2001); *Cnty. of Suffolk v.*

*Alcorn*, 266 F.3d 131, 139 (2d Cir. 2001).  "Even where there is no 'true conflict' between two

provisions, 'specific words will limit the meaning of general words if it appears from the whole

agreement that the parties' purpose was directed solely toward the matter to which the specific

words or clause relate.'"  *Aramony*, 254 F.3d at 413–14 (quoting 11 Richard A. Lord, *Williston*

*on Contracts* § 32:10, at 449 (4th ed. 1999)).

Determining whether a contract is ambiguous is a question of law for the trial court.

*Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir.

1993) (citing *W.W.W. Assocs.*, 566 N.E.2d at 642).  A contract is ambiguous when it is "capable

of more than one meaning when viewed objectively by a reasonable person" who is cognizant of

the trade practices, customs, and uses at issue and has examined the entire agreement.  *Id.* at

1095.  When contract language has a "definite and precise meaning" and there is no reasonable

basis for differing interpretations, the contract is not ambiguous.  *Id.* (quoting *Breed v. Ins. Co. of*

*North Am.*, 385 N.E.2d 1280,1282 (N.Y. 1978)).  Parties may not create ambiguity merely by

advocating for conflicting interpretations of their agreement.  *Seiden Assocs., Inc. v. ANC*

*Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992); *Bates Advert.*, 282 F. Supp. 2d at 216.

Similarly, one party cannot establish ambiguity if its interpretation "strain[s] the contract

language beyond its reasonable and ordinary meaning."  *Id.* (quoting *Bethlehem Steel Co. v.*

*Turner Constr. Co.*, 141 N.E.2d 590, 593 (N.Y. 1957)).  Nor is ambiguity created because one

party attaches a particular, subjective meaning to a term that differs from the term's plain

meaning.  *See Slattery Skanska Inc. v. Am. Home Assur. Co.*, 885 N.Y.S.2d 264, 274 (1st Dep't

2009).  These principles follow the rationale that one party cannot contract with another "on the supposition that his words mean one thing while he hopes that a court will adopt a construction by which the same words will mean another, more to his advantage."  *Gaultney-Klineman Art v. Hughes*, 642 N.Y.S.2d 265, 266 (1st Dep't 1996) (internal citations omitted).

Applying New York contract law principles, it is evident that the section regarding NSF Fees in the "Other Fees and Charges" section does not apply to FasTrack Checking Accounts. Thus, the reference to "per item" is not applicable to FasTrack accounts.  The Court need not consider whether the "per item" language is ambiguous.  The NSF language applicable to FasTrack Checking Accounts is unambiguous and permits Defendant to assess a new fee each time a debit request or check is presented for payment, regardless whether that same debit request or check previously has been presented for payment and rejected for insufficient funds.

The Court starts with the Fee Schedule as a whole.  The Fee Schedule "sets forth certain conditions, rates, fees and charges" applicable to six different types of accounts with Defendant, including Regular (Primary) Share Accounts, FasTrack Checking Accounts, Basic Share Draft Accounts, Money Market Accounts, Share Certificate Accounts and Club Accounts.  Compl. Ex. B.  It then describes in detail certain conditions, rates, fees, and charges applicable to each of the accounts.  The section for Regular (Primary) Share Accounts, for example, sets forth the Dividends and Service Charges and Fees for that type of account.  It is followed by a separate section for FasTrack Checking Accounts that describes the Dividends and Service Charges and Fees for that type of account, followed by a section for Holiday and Vacation Club Accounts, and so forth.  Each of the account sections concludes with the following identical language: "Please refer to 'OTHER FEES AND CHARGES' below for other applicable fees."  *Id.* Ex. B at 1–6.  Certain of the sections (such as those for Primary Share Accounts and FasTrack Checking

Accounts) have their own sections for the NSF Fee.  Others, such as those for Holiday and

Vacation Club Accounts and for Youth Custodial and Convenience Club Accounts, do not.

The final section of the Fee Schedule contains the "Other Fees and Charges," referred to

in each of the earlier sections.  Those Other Fees and Charges consist of a bulleted list of items.

Most of the items are not referred to in any of the individual sections describing each of the

different types of Municipal Credit accounts (e.g., "Statement Copy Fee," "ATM Card Fee," and

"Money Order Fee").  *Id.* Ex. B at 7–8.  At least one of them (NSF Fee) is contained in some but

not all of the individual sections describing the different types of Municipal Credit accounts.

Reading the Fee Schedule in its entirety and giving each term its ordinary meaning and to

avoid surplusage, as the Court must do, it is apparent that the language with respect to "NSF

Fee" in the "Other Fees and Charges" section applies to those accounts that do not otherwise list

the NSF Fee applicable to that type of account.  Likewise, that same language does not apply to

those sections that already set forth the relevant NSF Fee and how it is to be calculated.  That

interpretation gives effect to the ordinary meaning of the word "other."  It means "distinct from

that or those first mentioned."  *See* Merriam-Webster Online Dictionary, accessible at

https://www.merriam-webster.com/dictionary/other (accessed July 8, 2022).  The language thus

is intended to cover a fee that is distinct from one of those mentioned in the specific account

sections that precede it.  It is not intended to duplicate or contradict or modify something that is

already provided.  It also avoids surplusage.  Under Plaintiff's reading of the Fee Schedule, the

language describing the NSF Fee in the description of the FasTrack Checking account does no

work at all.  Everything it accomplishes would have been accomplished by the language in the

"Other Fees and Charges" section which, apart from the reference to "per item," mimics the

language in the FasTrack Checking section.  However, each provision must and can be given

meaning.  The FasTrack Checking section does not contain the "per item" notion, while the

"Other Fees and Charges" section does.  It follows that the FasTrack Checking accounts do not

limit Defendant to charging on a "per item" basis.  *See Axiom Investment Advisors*, 234 F. Supp.

3d at 534 (courts should avoid an interpretation that renders a provision "superfluous"); *Kolmar*

*Ams., Inc.*, 932 N.Y.S.2d at 494 (holding that a court should adopt an interpretation that "renders

no portion of the contract meaningless"); *Georgia Malone & Co. v. E & M Assocs.*, 81 N.Y.S.3d

387, 394 (1st Dep't, 2018) ("In construing a contract, one of a court's goals is to avoid an

interpretation that would leave contractual clauses meaningless.").[4]

The rule that the specific governs over the general also applies here. *See Carolina First*

*Bank*, 2000 WL 1597845, at *5; *cf Aramony*, 254 F.3d at 413 (holding that a general clause

applying "limitations imposed by the Internal Revenue Code" did not override specific tax

provisions detailed in an employee benefit plan); *Cnty. of Suffolk*, 266 F.3d at 139 (holding that a

detailed formula trumped a general term "shall pay" in providing for rate reduction calculations).

Plaintiff relies upon language in the "Other Fees and Charges" section.  But that section applies

to all of the Municipal Credit accounts; it is general.  By contrast, the NSF Fee provision in the

FasTrack Checking Account section is specific.  It applies only to those types of accounts.  Thus,

to the extent that there is conflict between the language in the FasTrack Checking section and

that in the Other Fees and Charges section, the language in the FasTrack Checking section

governs.

This understanding of the Contract is dispositive of Plaintiff's claim.  The trigger for the

assessment of an NSF fee for FasTrack Checking accounts is the presentment of an ACH debit

---

[4] The Court need not address the meaning of the language in the "Other Fees and Charges" section and whether, as a result of the reference to "per item," that section limits Defendant to a single charge per ACH debit request, bill payment, check or share draft.

request or bill payment or check and its return as unpayable.  The language of the provision does

not contain the "per item" language upon which Plaintiff relies.  The entire provision states:

> **NSF Fee:** Each time an ACH debit request or bill payment you authorize, or check
> (share draft) you draw, is presented and returned as unpayable for any reason, a
> $32.00 service charge will be assessed.

*Id.*  The object of the sentence is "an ACH debit request or bill payment" that has been

authorized or a "check (share draft)" that has been drawn.  It is that object that is presented and

that is returned as unpayable.  Under a plain meaning and grammatical reading of the provision,

it is that action—the presentment and return of a debit request or bill payment or check—that

triggers a fee.  And a fee is triggered "each time" the debit request or bill payment or check is

presented and returned.  The language does not limit Defendant to imposing a single fee for each

single ACH debit request, bill payment, check or share draft.  Dkt. No. 32 at 10.  The work of the

"you authorize" or "you draw" language is to make clear that the debit request or bill payment

has to have been authorized by the account holder or the check drawn by the account holder.  But

once it has been authorized or the check drawn, Municipal Credit can assess a new fee each time

it has been presented for payment.  Thus, when Defendant assessed a second fee in connection

with the second presentment of Plaintiff's February 2017 transaction through PayPal, it did

nothing more than what it was authorized to do.  Each time the transaction was presented to it

and it engaged in processing before it returned the request as unpayable, it was entitled to impose

a new fee.[5]

---

[5] Plaintiff does not claim otherwise.  Its argument rests on the notion that the NSF Fee provision
in the FasTrack Checking section must be read together with the same provision in the "Other
Fees and Charges" section such that the "per item" language in the latter section carries over to
the former section.

The limited caselaw regarding provisions such as Defendant's support this interpretation.[6]  In *Saunders v. Y-12 Fed. Credit Union*, 2020 WL 6499558, at *5 (Tenn. Ct. App. Nov. 5, 2020), the court construed a provision stating that on "any day" when an account holder has insufficient funds to pay "the full amount of a check, draft, transaction, or other item posted to your account . . . we may pay or return the overdraft" and charging a fee of "$32.00 each."  The court held that the contract unambiguously permitted the defendant credit union to charge account holders "each time any type of transaction is submitted by the merchant for payment and there are insufficient funds," constituting an overdraft triggering the $32.00 fee.  *Id.* In *Page v. Alliant Credit Union*, 2020 WL 5076690, at *1 (N.D. Ill. Aug 26, 2020) the Northern District of Illinois concluded that language providing "[w]hether the item is paid or returned, your account may be subject to a charge" and a triggering event "[i]f the amount of the item presented for payment exceeds the total available overdraft sources" unambiguously permitted the defendant to charge an NSF fee every time the merchant requested payment.  Likewise, in *Winamaki v. Umpqua Bank*, 2020 WL 6861466, at *1 (Or. Cir. Oct. 30, 2020), the court determined that a provision stating a bank "will charge you a fee of $35 each time" it pays or returns an overdraft transaction permitted multiple charges.

The cases cited by Plaintiff are all distinguishable.  In each, the financial institution used the "per item" language that the Court has determined is not applicable to FasTrack Checking accounts; in each, the relevant contractual provisions could be read together while according

---

[6] Some courts, in denying a motion to dismiss, invoke temporal triggers as unambiguous alternatives to the fee language under consideration.  *See, e.g.*, *Besser v. Sunflower Bank*, 2022 WL 1184895, at *6 (D. Colo. Mar. 31, 2022) ("Indeed, a simple change in the language of the Deposit Agreement—stating that the accountholder 'may incur a fee each time a payment order is presented or resubmitted'—would likely have been sufficient."); *McNeil v. Capital One Bank, N.A.*, 2020 WL 580263, at *2 (E.D.N.Y. Sept. 29, 2020) (noting that plaintiff's briefs distinguish between each item being processed and each time an item is processed).

meaning to each provision, avoiding surplusage, and honoring the language of the agreement and the rules favoring the specific over the general.  In several cases, courts found ambiguity in contracts that incorporated a fee schedule chart with an overdraft/NSF fee entry indicating a "per item" charge.  *See, e.g.*, *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 640 (S.D.N.Y. 2020) (denying motion to dismiss when the fee schedule identified the "per item" charge); *Richard v. Glens Falls Nat'l Bank*, 2021 WL 810218, at *11 (N.D.N.Y. Mar. 3, 2021) (holding that, because the fee schedule provides for a $32 NSF fee "per item" without defining item, the contract was facially ambiguous); *Watson v. Suffolk Fed. Credit Union*, 2022 WL 523543, at *1, 4 (E.D.N.Y. Feb. 22, 2022) (holding that a fee schedule providing for a "per item" NSF fee and a provision subjecting accountholders to a fee "[i]f, on any day, the available funds . . . are not sufficient" to pay the transaction rendered the contract ambiguous);[7] *Mawyer v. Atl. Union Bank*, 2022 WL 1049311, at *1 (E.D. Va. Apr. 7, 2022) (holding that a contract incorporating a fee schedule with the provision "Non-Sufficient Funds (*Per Item*)" was ambiguous).[8]

In *Smith v. Jovia Fin. Credit Union*, 2021 WL 4173655, at *1 (E.D.N.Y. Aug. 24, 2021), the relevant contract language from the fee schedule read: "Item Returned Unpaid or Check Paid via Courtesy Payment (per item)[:] $30."  The membership agreement read: "If a check, item or

---

[7] Plaintiff filed a notice of supplemental authority on March 9, 2022 to bring this case to the Court's attention.  Dkt. No. 37.  Defendant filed a motion to strike and an accompanying memorandum of law on March 11, 2022.  Dkt. Nos. 38, 39.  This Court denies the motion to strike on the grounds that the supplemental authority provides further support without adding new arguments or prejudicing defendants.  *Cf Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 445 n.1 (S.D.N.Y. 1998) (permitting consideration of untimely statements at the summary judgment stage when the subsequent statement "is the same in all material respects as [the] original statement" and defendants have the opportunity to respond).  This Court has considered both the additional supplemental authority and Defendant's response and found that neither affects the reasoning or outcome of its decision.
[8] Plaintiff filed a notice of additional supplemental authority on April 19, 2022.  For the reasons discussed *supra* note 7, this Court considers the attached authority and finds that it does not impact the reasoning or outcome of its decision.

transaction is presented without sufficient funds in your account to pay it, we may, at our

discretion, pay the item (creating an overdraft) or return the item for insufficient funds (NSF)."

*Id.* The defendant in that case argued that the language in the membership agreement permitted

it to charge an NSF fee or overdraft fee each time an "item . . . is presented." The court held

that the language in the two provisions did not necessarily contradict each other and that they

could be read together to "suggest that [d]efendant may impose a fee when an item is presented,

but only once per item." *Id.* at *3. The court thus was able to construe the contract language to

give each provision effect and consistent with the ordinary meaning of the language used by the

parties. In this case, by contrast, to give effect to the language in the "Other Fees and Charges"

section would be to render the language in the FasTrack section surplusage, to ignore the

contract's use of the word "other," and to read into the provision for FasTrack accounts language

the parties tellingly omitted. The *Smith* court rejected the notion that the contract implicitly

permitted a fee to be charged each time an item was presented; by contrast, this contract

explicitly authorizes Municipal Credit to do so.

Plaintiff cites other cases where courts have found ambiguity, but every case references a

fee or charge for each item presented, not each time an item is presented. *See, e.g.*, *Chambers v.

HSBC Bank USA, N.A.*, 2020 WL 7261155, at *1 (S.D.N.Y. Dec. 10, 2020) (assessing an NSF

fee "[f]or each withdrawal, check, electronic funds transfer or other item that overdraws your

account"); *McNeil*, 2020 WL 580263, at *2 (permitting bank to "charge a fee for each item

returned"); *Roy v. ESL Fed. Credit Union*, 2020 WL 5849297, at *8–9 (W.D.N.Y. Sept. 30,

2020) (finding that the failure to provide for a charge "each time" rather than for "each overdraft

item" rendered the contract term ambiguous); *see also* Dkt. No. 32 at 8–9, 8 n. 38 (citing cases

and describing "per item," "per occurrence," or similar language in each instance). The closest

16

language to the term at issue appears in *Petrey v. Visions Fed. Credit Union*, 2021 WL 2364971, at *1 (N.D.N.Y. June 9, 2021), permitting an NSF fee charge "[i]f . . . a debit item is presented," without an accompanying fee schedule identifying a "per item" charge.  The *Petrey* court found it ambiguous whether the phrase "item" referred to the first presentment and any subsequent presentments or if the provision permitted charging a fee each time the item "is presented."  *Id.* at *3.  The Contract here explicitly permits Defendant to charge a fee "each time" the request is presented.  It has definite meaning that the term in *Petrey* lacks.

Finally, Plaintiff alleges that other banks and credit unions employ more explicit terms alerting their accountholders to the possibility of multiple charges.  Compl. ¶¶ 35–36.  Plaintiff provides the following example from First Financial Bank.  Its disclosure of charges states:

> Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment is considered an item and will be charged accordingly.

*Id.* ¶ 36.

The language makes clear that the account holder is at risk for multiple charges based on multiple presentments.  The failure to include more express language of the parties' intent does not automatically create ambiguity in a contract.  *See Sisters of St. Dominic of Caldwell v. Allied Irish Bank*, 2005 WL 8176058, at *6 (D.N.J. Mar. 11, 2005).  Municipal Credit's language here is clear and unambiguous and permitted the conduct at issue.  No more is required.

This result admittedly may seem harsh.  An accountholder who having authorized a transaction with a merchant or drawn a check with insufficient funds in his account thereafter may have no control over how often the merchant presents the debit request or check for payment—the merchant may do so more than once with the result that the accountholder will be subject to more than one NSF fee.  But the wisdom or fairness of that practice is not before the

Court.[9]  It is the subject of regulation.  *See* Dkt. No. 27 at 3 (noting that merchants are allowed

only up to three ACH transactions in an attempt to collect payment under rules promulgated by

NACHA, the entity that governs ACH transactions); Dkt. No. 32 at 12-13 (describing NACHA

rules but arguing that they are not properly before the Court); Dkt. No. 28 Ex. A at 1.  The only

issue before the Court is one of private contract law—whether Plaintiff agreed in the Contract to

permit Defendant to impose a new NSF charge each time a debit request is presented for

payment and returned for not sufficient funds.  She did.  Accordingly, her breach of contract

claim must be dismissed.

District courts may dismiss a claim without leave to amend when amendment would be

futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to amend should be

"freely given" absent circumstances such as "undue delay, bad faith . . . undue prejudice to the

opposing party by virtue of allowance of the amendment, futility of the amendment, etc.").

Amendment would be futile if an amended claim would not withstand a motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6).  *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119,

123 (2d Cir. 1991) (holding that an amended complaint must be judged by the "same standards"

as those governing the adequacy of a filed pleading).  When the plain language of a contract

unambiguously forecloses a plaintiff's claim, a district court may determine that re-pleading

would be futile.  *See Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 160

(2d Cir. 2016) (upholding district court's denial of motion of leave to re-plead based on

---

[9] On the side of the financial institution, it presumably incurs costs each time a debit request is presented by a merchant for payment.  A customer whose debit request results in more than one presentment that has to be returned as unpayable may thus impose more costs on the institution than a customer whose debit request need not be returned more than once.  Plaintiff alleges that Defendant could pay the requested payment and charge accountholders an overdraft fee, thus removing the possibility of representment.  Compl. ¶ 22.  The financial institution also incurs costs under this approach—the cost of the requested payment less the overdraft fee.

unambiguous contract language); *Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 530 F. Supp. 3d 447, 460 (S.D.N.Y. 2021) (denying plaintiffs motion for leave to amend based on unambiguous insurance policy language and two prior opportunities to amend). This is the case here.

## CONCLUSION

The motion to dismiss is GRANTED.  Plaintiff's complaint is dismissed with prejudice. *See, e.g.*, *Pot Luck, L.L.C. v. Freeman*, 2009 WL 693611, at *5 (S.D.N.Y. Mar. 10, 2009) (dismissing with prejudice where license language unambiguously barred claim because amendment would be futile).

The Clerk of Court is respectfully directed to close Dkt. Nos. 26 and 38 and to close the case.


SO ORDERED.


Dated: July 12, 2022
      New York, New York                    LEWIS J. LIMAN
                                     United States District Judge